**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 09-cv-02775-CMA-BNB

SUZANNE M. STASKO ROBINSON,

      Plaintiff,

v.

DENNIS LEE TERWILLEGER,
TRUCKING EQUIPMENT COMPANY, INC., and
TECH LOGISTICS CORPORATION d/b/a SYSTEMS LOGISTICS,

      Defendants.

---

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

---

This matter having come before the Court upon Plaintiff's request for a hearing on damages, the Court having reviewed the file and heard the evidence in a hearing on April 26, 2011, finds and orders as follows:

1.      On November 25, 2009, Plaintiff filed her Complaint and Jury Demand, naming as Defendants Dennis Lee Terwilleger, Trucking Equipment Company, Inc. and Tech Logistics Corporation, d/b/a Systems Logistics.

2.      Tech Logistics Corporation d/b/a Systems Logistics was served on December 11, 2009.  To date, no responsive pleading has been filed by or on behalf of Tech Logistics Corporation d/b/a Systems Logistics, and default was entered pursuant to Fed. R. Civ. P. 55(a) against this Defendant on January 29, 2010.

3.      Defendant Dennis Lee Terwilleger was served on July 3, 2010, but no responsive pleading has been filed by or on behalf of Defendant Terwilleger, and default was entered against this Defendant on October 21, 2010.

4.      Defendant Trucking Equipment Company, Inc. has not been located or served with a copy of the Complaint.

5.      At Plaintiff's request, a hearing to determine the amount of damages to be assessed against Defendant Terwilleger and Defendant Tech Logistics Corporation d/b/a Systems Logistics, pursuant to Fed. R. Civ. P. 55(b)(2)(B), was held on April 26, 2011.  At the hearing, the Court heard testimony from Plaintiff herself, Dr. Melissa Henston, Dr. Keith Graves, and James (Mel) Robinson, Jr., Plaintiff's husband.  The Court also admitted into the evidence the deposition of Mr. Ronald Langer, as Exhibit 17.  Also admitted into evidence were Plaintiff's offered Exhibits 1 through 16.

6.      The Court notes, as a preliminary matter, that the Plaintiff's theory of liability against Defendant Tech Logistics Corporation d/b/a Systems Logistics is based solely on the doctrine of *respondeat superior*.  In other words, Plaintiff alleges that Defendant Tech Logistics Corporation d/b/a Systems Logistics is responsible, under the doctrine of *respondeat superior,* for the negligence of Defendant Terwilleger in causing the automobile accident which forms the basis of Plaintiff's Complaint.  Pursuant to this Court's Order of April 25, 2011, Plaintiff presented evidence of the relationship between Defendant Terwilleger and Defendant Tech Logistics Corporation d/b/a Systems Logistics, including Exhibit 1, a copy of the State of Colorado Accident Report dated February 6, 2008, which establishes that the vehicle Defendant Terwilleger was driving was owned by Trucking Equipment Company, Inc.  Exhibit 2, admitted by this Court, is

the result of an investigation done by Weeks & Associates, LLC, dated May 2, 2010. That report establishes that Tech Logistics Corporation has done business under the names Systems Logistics and Trucking Equipment Company, Inc., and sets forth various addresses for such companies, including an address on Ovid Avenue, in Des Moines, Iowa, the same address reflected on the Accident Report, Exhibit 1.  Also admitted into evidence was a document from the Texas Secretary of State, reflecting that Tech Logistics Corporation operates under the assumed name "Systems Logistics." Finally, the Court takes note of Exhibit 4, admitted into evidence, which is a "Company Snapshot" for Tech Logistics Corporation, assigned the U.S. Department of Transportation No. 770851.  This USDOT number matches the carrier identification number set forth on the State of Colorado Accident Report, Exhibit 1, associated with Trucking Equipment Company, Inc.  The Court accepts this evidence as proof that Defendant Terwilleger was acting as an agent for Defendant Tech Logistics on the date of the accident, and therefore Defendant Tech Logistics is responsible for Defendant Terwilleger's negligence under the doctrine of *respondeat superior*.

7.     The Court notes, as well, that neither Defendant Terwilleger nor Defendant Tech Logistics have filed responsive pleadings, and have therefore waived the right to challenge the allegations of negligence, *respondeat superior*, and injuries sustained by Plaintiff as a proximate result of Defendant Terwilleger's negligence.

8.     At the hearing on April 26, 2011, the Court first heard testimony from Dr. Melissa Henston, who the Court recognized and accepted as an expert in the diagnosis and treatment of post-traumatic stress disorder, anxiety disorder, and closed head injuries.  Dr. Henston's *Curriculum Vitae* was admitted as Exhibit 15.  In addition,

3

the Court admitted medical records from Dr. Henston's office, Colorado

NeuroBehavorial Health, P.C., including Exhibit 5, a neuro/psychological assessment

dated December 28, 2008, Exhibit 6, a neuro/psychological assessment dated January

25, 2009, and Exhibit 7, a brief neuro/psychological assessment dated April 14, 2011.

The Court finds that the testimony of Dr. Henston, and Exhibits 5, 6, and 7 establish

that Plaintiff sustained a mild traumatic brain injury as a result of the February 6, 2008

accident, and currently suffers from a post-concussive syndrome, with mixed anxiety

and depressed mood, difficulties with memory, headaches, an impairment in cognitive

functioning, including impairment with perceptual reasoning skills, immediate visual

memory, working memory, and cognitive speed of processing.  The Court further finds

that, although Dr. Henston characterized Plaintiff's traumatic brain injury as "mild," such

a traumatic brain injury has had a profound impact on Plaintiff's well-being, emotional

stability, and ability to earn a living as a real estate professional.  The Court further finds

that Dr. Henston believes that Plaintiff will benefit from an additional 26 weeks of

counseling and therapy with Dr. Henston, on a weekly basis, at a cost of $100.00 per

hour per week.  The Court finds that both Dr. Henston's past treatment of Plaintiff, and

planned future treatment, with an estimated cost of $2,600.00, is both reasonable and

related to the accident of February 6, 2008.

   9. The Court next heard testimony from Mr. James (Mel) Robinson, Jr.,

Plaintiff's husband.  Mr. Robinson testified as to the dramatic impact his wife's injuries,

including her cognitive impairments, post-traumatic stress disorder, and anxiety

disorder, have had on his wife, their relationship, and their two children.  The Court

accepts Mr. Robinson's testimony in this regard.

10.     Mr. Robinson further testified as to the past medical expenses incurred by Plaintiff for reasonable medical treatment related to the injuries sustained by Plaintiff as a result of the February 6, 2008 accident, including $24,327.72 in medical expenses paid by Injury Finance and $145,603.50 in medical expenses billed to Champ VA, an insurance plan available to Plaintiff due to Mr. Robinson's military service, including his service in combat during the Vietnam War.

11.     Pursuant to Colorado law, specifically C.R.S. § 10-1-135, the Court finds that it is the amount of medical expenses that are billed, rather than that amount which is ultimately paid, which establishes the amount of damages recoverable under Colorado law for medical expenses sustained by an accident victim such as Plaintiff. (See also, *Volunteers of America v. Gardenswartz,* 242 P.3d 1080 (Colo. 2010)).  The Court specifically notes the provisions of C.R.S. § 10-1-135(10)(a), which states in part:

> The fact or amount of any collateral source payment or benefits shall not be admitted as evidence in any action against an alleged third-party tortfeasor . . . .

The Court, therefore, accepts the amounts testified to by Mr. Robinson as the amount of medical expenses billed, as reflecting the amount of past medical expenses for which Plaintiff is entitled to be compensated as economic damages, in addition to other economic damages, as will be addressed below.

12.     Mr. Robinson also testified as to the damage sustained by the car which Plaintiff was driving at the time of the collision, as reflected in the photographs in Exhibit 12, which was admitted into evidence.  The Court takes particular note of Mr. Robinson's testimony that Plaintiff has not been able to view photographs of the damage done to her vehicle since the collision, due to the profound emotional impact

that collision and resulting injuries have had on her.  The Court further finds that this reaction is consistent with Dr. Henston's diagnosis of mild traumatic brain injury, with resulting post-traumatic stress disorder and anxiety disorder, as noted above.

13.    The Court further accepts the testimony of Mr. Robinson concerning the costs associated with Plaintiff's ongoing need for prescription medication, including Percocet at a cost of $16.00 per month, Nexium at a cost of $172.00 per month, Prednisone at a cost of $11.00 per month, Prozac at a cost of $70.00 per month, and Effexor at a cost of $70.00 per month.  The Court further finds that the need for this prescription medication, with its associated costs, will continue indefinitely, and supports an award of compensatory damages for future medications of $117,972.00, calculated at $339.00 per month times 29 years, Plaintiff's life expectancy under the mortality table set forth in C.R.S. § 13-25-103, which the Court accepts as evidence pursuant to C.R.S. § 13-25-102.

14.    During the hearing on April 26, 2011, the Court also heard testimony from Dr. Keith Graves, who the Court accepted as an expert in chiropractic medicine, including the diagnosis and treatment of soft tissue injuries resulting from vehicular accidents such as the one at issue here.  Admitted as Exhibit 16 is Dr. Graves' *Curriculum Vitae*.  Also admitted into evidence were an initial evaluation by Dr. Graves dated February 10, 2009 (Exhibit 8), an interim report dated March 20, 2009 (Exhibit 9), an interim report dated April 6, 2009 (Exhibit 10), and a daily treatment note, consisting of three pages, dated April 5, 2011 (Exhibit 11).  The Court finds that, based on Dr. Graves' testimony and Exhibits 8, 9, 10, and 11, that Plaintiff sustained the following injuries as a result of the collision on February 6, 2008:

•      Left trochanteric bursitis and associated myofascial/myogenic dysfunction/adhesions;

•      Mild bilateral, left greater than right, cervical spine/cervicothoracic junction sprain/strain with compensatory mechanical dysfunction in the cervical spine;

•      Cervicogenic/tension headaches;

•      Mild lumbar spine/lumbosacral junction sprain/strain injury with compensatory mechanical dysfunction present in the lower lumbar spinal facets at L4-L5 and L5-S1;

•      Pelvic unleveling, due to mechanism of injury contributing towards poor lumbosacral mechanics;

•      Left lateral thigh myofascial/myogenic pain syndrome likely due to left knee replacement surgery, with additional mechanical dysfunction within the left acetabulofemoral joint.

15.      The Court further finds that the treatment provided by Dr. Graves is reasonable and related to the automobile accident of February 6, 2008.  The Court further finds that, according to the testimony of Dr. Graves, Plaintiff will need such chiropractic treatment and manipulation in the future, including maintenance treatment, for 18 to 24 months, at a total cost of $6,480.00.

16.      The Court also received into evidence the deposition of Mr. Ronald Langer, a licensed clinical social worker providing counseling to Plaintiff as a result of the emotional distress, specifically post-traumatic stress disorder and anxiety disorder, Plaintiff is experiencing as a result of the accident of February 6, 2008.  The Court accepts Mr. Langer as an expert in the diagnosis and treatment of post-traumatic stress

disorder and anxiety disorder.  The Court further finds that Mr. Langer's testimony is consistent with, and supports, the testimony of Dr. Henston, and supports this Court's finding that Plaintiff is suffering from a chronic, moderate post-traumatic stress disorder and anxiety disorder as a result of the February 6, 2008 accident.  The Court further finds that the treatment provided by Mr. Langer is both reasonable and related to the February 6, 2008 accident.  The Court further finds, and accepts, Mr. Langer's testimony as to a future treatment plan for Plaintiff, including weekly counseling sessions, at a cost of $125.00 per visit.  While Mr. Langer's testimony as to the length of the need for such future treatment was not exact, the Court nevertheless finds that it is more likely than not that Plaintiff will need such weekly counseling sessions for at least the next ten years, particularly given a failed attempt to wean Plaintiff from such counseling sessions, as testified to by Mr. Langer.  The Court therefore finds that the anticipated future cost of counseling sessions with Mr. Langer amounts to $65,000.00, calculated at a rate of $125.00 per visit, per week, times ten years.

17.    Lastly, the Court heard testimony from Plaintiff herself, and finds that the automobile accident forming the basis of her Complaint and allegations against Defendants has had a profound and lasting impact on her well-being, lifestyle, and ability to earn a living.  Plaintiff's testimony was consistent with the testimony of her husband, Mr. Robinson and those of her medical providers, including Dr. Henston, Mr. Langer, and Dr. Graves.  The Court finds, based on Plaintiff's testimony and the other evidence admitted during the hearing, including testimony from her husband and the aforementioned medical providers, that an award of the maximum amount available to

Plaintiff for non-economic damages, pursuant to C.R.S. § 13-21-102.5(3)(a), currently $468,010.00, is warranted.

18.    The Court further accepts Plaintiff's testimony as to her work history and professional experience in real estate.  The Court accepts Plaintiff's testimony that, prior to the accident, she earned, on average, approximately $65,000.00 per year, and specifically finds that Plaintiff is no longer able to engage in that profession, as supported by both her testimony and the testimony from her husband and the medical professionals providing care and treatment to her following the accident.  Given that Plaintiff was 48 years old at the time of the accident, and presumably was to work until a typical retirement age of 65, Plaintiff's economic damages as a result of her injuries, and association inability to work, amounts to $1,105,000.00.

19.    The Court therefore awards compensatory damages to Plaintiff in the following amounts:

- Non-economic damages - $468,010.00;

- Economic damages of $1,466,983.22, including:

    - Past medical expenses - $169,931.22;

    - Future expenses associated with medical treatment by Dr. Henston, Dr. Graves, and Mr. Langer - $74,080.00;

    - Future costs associated with prescription medications - $117,972.00.

    - Past lost income - $195,000.00;

    - Future lost income - $910,000.00.

20.     The Court further orders that Plaintiff is entitled to simple interest at a rate of nine percent (9%) from February 6, 2008 until the date of filing, November 25, 2009, and post-filing interest at a rate of nine percent (9%), compounded annually, until the date of judgment set forth below, pursuant to C.R.S. § 13-21-101(1).  The Court further finds that Plaintiff is entitled to post-judgment interest at a rate of eight percent (8%), compounded annually, pursuant to C.R.S. § 5-12-102(1)(b).

21.     A separate entry of judgment will be entered by the Court, as of the date of this Order.

Entered this   13th   day of May, 2011.

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge